# EXHIBIT A

IN THE IOWA DISTRICT COURT FOR DALLAS COUNTY

| | |
|---|---|
| TELA ROBINSON, | |
| Plaintiff, | Case No. _____ |
| vs. | **ORIGINAL NOTICE** |
| CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY, LLC, IOWA TOTAL CARE, INC., STEPHANIE WEIR, and CHRISTINA DUEA, | |
| Defendants. | |

**TO:  THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE NOTIFIED** that a petition has been filed in the office of the Clerk of this Court naming you as a Defendant in this action. A copy of the Petition (and any documents filed with it) is attached to this notice. The attorneys for the Plaintiff are Bruce H. Stoltze, Jr., and Amanda M. Bartusek of Stoltze & Stoltze, PLC, whose address is 300 Walnut Street, Suite 260, Des Moines, Iowa 5030, telephone number (515) 244-1473, facsimile (515) 244-3930 and email: bj.stoltze@stoltzelaw.com and amanda.bartusek@stoltzelaw.com.

You must serve a motion or answer within twenty (20) days after service of this Original Notice upon you and, within a reasonable time thereafter, file your Motion or Answer, with the Clerk of Court for Iowa District Court for Dallas County, at the Courthouse in Adel, Iowa. If you do not, judgment by default will be rendered against you for the relief demanded in the Petition.

This case has been filed in a county that utilizes electronic filing. General rules and information on electronic filing are contained in Iowa Court Rules Chapter 16. Information regarding requirements related to the protection of personal information in court filings is contained in Iowa court Rules Chapter 16, division VI.

If you need assistance to participate in court because of a disability, immediately call the disability coordinator at 515-286-3394. Persons, who are hearing or speech impaired, may call Relay Iowa TTY at 1-800-735-2942. Disability coordinators cannot provide legal advice.

**IMPORTANT:** YOU ARE ADVISED TO SEEK LEGAL ADVICE
AT ONCE TO PROTECT YOUR INTERESTS

# Iowa Judicial Branch

*Case No.*  **LACV043243**

*County*  **Dallas**

*Case Title*  TELA ROBINSON V. CENTENE CORPORATION, ET AL.

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 286-3394** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **10/22/2021 08:27:43 AM**



*District Clerk of* Dallas          *County*

**/s/ Adam Juckette**

IN THE IOWA DISTRICT COURT FOR DALLAS COUNTY

| | |
|---|---|
| TELA ROBINSON,<br><br>    Plaintiff,<br><br>v.<br><br>CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY, LLC, IOWA TOTAL CARE, INC., STEPHANIE WEIR, and CHRISTINA DUEA<br><br>    Defendants. | Case No.<br><br><br>**PLAINTIFF'S PETITION AT LAW AND JURY DEMAND** |

COMES NOW the Plaintiff, Tela Robinson, and for her Petition at Law and Jury Demand against the Defendants, Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc., Stephanie Weir, and Christine Duea, respectfully states the following:

### INTRODUCTION

**1.** At all times pertinent hereto the Plaintiff, Tela Robinson, (hereinafter referred to as "Plaintiff" or "Robinson") was and is an individual and resident of Polk County, Iowa.

**2.** At all times pertinent hereto the Defendant Centene Corporation (hereinafter referred to as "Centene Corporation") was and is a corporation with a principal place of business in the State of Missouri and which conducts significant business—including the operation of subsidiaries—within the state of Iowa, including Dallas County, Iowa.

**3.** At all times pertinent hereto the Defendant, Centene Management Company, LLC, (hereinafter referred to as "Centene Management Company") was and is a legal entity with its home office in the State of Missouri, and which conducts significant business within the state of Iowa, including Dallas County, Iowa.

1

4. At all times pertinent hereto Defendant Centene Management Company was and is a subsidiary of Defendant Centene Corporation, was managed and controlled by Defendant Centene Corporation, and was the agent for and acting on behalf of Defendant Centene Corporation.

5. At all times pertinent hereto the Defendant, Iowa Total Care, Inc., (hereinafter referred to as "Iowa Total Care") was and is an Iowa Corporation with its home office in West Des Moines, Iowa in Dallas County, Iowa, incorporated in, and operating under the laws of the State of Iowa.

6. At all times pertinent hereto Defendant Iowa Total Care was and is a subsidiary of Defendant Centene Corporation, was managed and controlled by Defendant Centene Corporation, and was the agent for and acting on behalf of Defendant Centene Corporation.

7. Upon information and belief, Defendants Centene Corporation, Centene Management Company, and Iowa Total Care have four or more employees and had four or more employees at the time of the events in question in this matter.

8. Upon information and belief, Defendant Stephanie Weir (hereinafter referred to as "Weir"), was at all times material hereto, a Manager, Case Management Long Term Care for Centene Corporation, Centene Management Company, and/or Iowa Total Care, and a resident of Iowa.

9. Upon information and belief, Defendant Christina Duea (hereinafter referred to as "Duea"), was at all times material hereto, a Human Resources Partner for Centene Corporation, Centene Management Company and/or Iowa Total Care, and a resident of Iowa

2

**10.** At all times material and relevant herein, Defendants Weir and Duea were acting within the scope of their employment with Defendants Centene Corporation, Centene Management Company and/or Iowa Total Care.

**11.** At all times material and relevant herein, Defendants Centene Corporation, Centene Management Company, and Iowa Total Care, and or their employees and agents were acting within the scope of their employment and/or agency with Centene Corporation, Centene Management Company, and Iowa Total Care and were the agents acting for and on behalf of Centene Corporation, Centene Management Company, and Iowa Total.

**12.** Jurisdiction is appropriate because all discriminatory and/or adverse actions, and all acts that form the nexus at issue outlined herein took place in Dallas County, Iowa.

**13.** The amount in controversy in this matter exceeds the jurisdictional requirement for this Court.

**14.** Plaintiff filed a complaint with the Iowa Civil Rights Commission, which was cross filed with the U.S. Equal Employment Opportunity Commission.

**15.** Plaintiff was issued a right-to-sue letter on July 23, 2021.

**16.** Relief in this case is sought against the Defendants in their individual, personal and official capacities and as respondent superior.

## FACTUAL BACKGROUND

**17.** Plaintiff repleads and reincorporates paragraphs 1–16 and 108–331 as if pled herein.

3

18.     Defendant Centene Corporation is a Missouri-based corporation and managed care organization that provides healthcare solutions to recipients of government-sponsored and privately insured health care programs.

19.     Defendant Iowa Total Care is a state-based subsidiary of Defendant Centene Corporation and provides managed healthcare products and services, primarily through Medicaid and Medicare as well as through commercial health insurance.

20.     Defendant Centene Management Company is a subsidiary of Defendant Centene Corporation and provides administrative and business support to state-based Centene Corporation subsidiaries such as Iowa Total Care.

21.     Plaintiff began her employment with Defendants Centene Corporation, Centene Management Company and/or Iowa Total Care (hereinafter "Corporate Defendants") on or about April 29, 2019.

22.     Plaintiff has been diagnosed with and receives treatment for a panic/anxiety disorder.

23.     Plaintiff is Black/African American.

24.     Plaintiff is female.

25.     Plaintiff is a lesbian.

26.     At the time of Plaintiff's termination, Plaintiff's wife was pregnant and Plaintiff was scheduled to take maternity leave at the end of that month.

27.     Plaintiff was originally hired as a Program Coordinator II but transitioned to Case Manager, Long Term Care Coordinator I on or about December 8, 2019.

28.     As a Case Manager, Plaintiff was responsible for coordinating member services and access to long-term care.

29.     Defendant Stephanie Weir was a Manager, Case Management Long Term Care for the Corporate Defendants and was Plaintiff's immediate supervisor during her employment as a Case Manager.

30.     During Plaintiff's training period as Case Manager, Defendant Weir assigned her to a high-needs member who "preferred to work with black people."

31.     Plaintiff was one of only two Black employees on Weir's team.

32.     Plaintiff believed that this member would be better served by a coworker with more experience.

33.     Defendant Weir's actions made Plaintiff very uncomfortable at being singled out.

34.     Because she was relatively new to the Case Manager position, Plaintiff often had to seek assistance from her Defendant Weir and other coworkers.

35.     Defendant Weir was often unavailable during these inquiries only to follow up with Plaintiff at a later time.

36.     In April 2020, Defendant Weir contacted employees of Corporate Defendants, including Plaintiff, to ask how they were handling the workplace changes that had resulted from the COVID-19 pandemic.

37.     These changes included an end to in-person client meetings, an increased need for treatment plan updates, and additional State paperwork.

38.     During that conversation, Plaintiff disclosed to Defendant Weir that she had a panic disorder and concerns regarding COVID-19 and the drastically expanded caseload.

5

**39.**    Defendant Weir immediately changed the subject and moved on with the conversation.

**40.**    Then, in May 2020, Plaintiff informed Defendant Weir that she and her wife were expecting a baby at the end of September.

**41.**    Plaintiff also informed her that she would be taking six to eight weeks of maternity leave.

**42.**    Defendant Weir immediately responded that Plaintiff "will want to double check with HR about that."

**43.**    Defendant Weir's tone suggested that she did not think Plaintiff qualified for maternity leave.

**44.**    After these disclosures, Plaintiff noted a shift in Defendant Wier's availability and demeanor.

**45.**    Prior to the disclosures, Defendant Weir would respond promptly to Plaintiff's emails and interoffice messages.

**46.**    Defendant Weir would readily share what she would normally do or what she found easiest in similar situations.

**47.**    At times, Defendant Weir would even call Plaintiff and spend 15 to 20 minutes discussing her processes and reasons behind them. Defendant Weir would even apologize to Plaintiff for giving more detail than was needed.

**48.**    After disclosing her panic/anxiety disorder Plaintiff continued to reach out to Defendant Weir for assistance as needed.

**49.**    However, she often would not receive a response.

6

**50.**     Meanwhile, Plaintiff's coworkers reported that Defendant Weir was communicating with them.

**51.**     In fact, Defendant Weir provided a lot of hands-on assistance to another male case manager that started his employment not long after Plaintiff.

**52.**     Defendant Weir would frequently offer praise and encouragement to this case manager during meetings company meetings, and she would select him for special projects.

**53.**     When Defendant Weir did respond to Plaintiff's inquiries, she would instruct Plaintiff to go look up the answer herself or advise Plaintiff that the questions would be discussed in their biweekly one-on-one meetings.

**54.**     However, these meetings sometimes would be canceled or postponed often without explanation.

**55.**     Sometimes Defendant Weir would not reschedule the meetings at all.

**56.**     When the meetings did occur, Defendant Weir would brush Plaintiff's questions aside.

**57.**     On one occasion, Plaintiff had a time-sensitive question, regarding data inputting and coding work needed to complete state assessments.

**58.**     Plaintiff sent Defendant Weir these questions via both e-mail and messenger, as was their usual practice, but Defendant Weir did not respond in time.

**59.**     Defendant Weir blamed Plaintiff and said Plaintiff should have called her even though that was not an established channel of communication.

**60.**     Defendant Weir's lack of communication made Plaintiff feel that she did not have her supervisor's support.

61. The change in Defendant Weir's behavior was so pronounced that it seemed as though Defendant Weir was actively trying to avoid assisting Plaintiff.

62. Because of the lack of communication from Defendant Weir, Plaintiff started contacting senior case managers with questions instead.

63. At one point, one of these senior case managers asked a superior why Plaintiff was not able to contact Defendant Weir directly.

64. During this time, Plaintiff nonetheless continued to complete all of her duties by their assigned deadlines.

65. However, Defendant Weir once discouraged Plaintiff from updating assessments to complete reports, but Defendant Weir then criticized Plaintiff for failing to update these assessments in a timely fashion.

66. At no point did Plaintiff witness Defendant Weir treating another employee in this manner.

67. Although other case managers were encouraged to develop their own tracking system and monthly processes, Defendant Weir wanted Plaintiff to follow the processes that Defendant Weir herself preferred.

68. Defendant Weir would send out a weekly report to inform case managers of how many member contacts were needed that month, with the expectation that all of these member contacts would be completed by month's end

69. Defendant Weir advised Plaintiff that she did not like how Plaintiff structured her schedule. Namely, that Plaintiff focused on paperwork and meetings at the beginning of the month and focused on telephone contacts at the end of the month.

**70.**    However, other employees structured their months in a similar way and did not receive the same feedback from Defendant Weir.

**71.**    On or about June 11, 2020, Plaintiff informed Defendant Weir that she was experiencing physical health issues (Menorrhagia) due to uterine tumors.

**72.**    Plaintiff asked to adjust her schedule for the day as she required an emergency blood transfusion.

**73.**    Plaintiff notified Defendant Weir that Plaintiff's doctor had advised her that she would need a hysterectomy to treat the condition.

**74.**    Defendant Weir asked about the length of Plaintiff's leave for the operation.

**75.**    Plaintiff responded that her physician said that recovery could take between four and eight weeks and told Defendant Weir that she would follow up once she had more information.

**76.**    Plaintiff submitted a request for leave under the Family and Medical Leave Act on or about July 21, 2020.

**77.**    Plaintiff's surgery was scheduled for July 29, 2020, and Defendants approved Plaintiff's request to begin FMLA leave on that date.

**78.**    Plaintiff informed Defendant Weir and Human Resources of this date.

**79.**    Plaintiff also submitted a claim for Short Term Disability benefits to begin on or about August 5, 2020, and end on or about August 25, 2020.

**80.**    This claim was approved, and these benefits were subsequently extended through approximately September 2, 2020.

**81.**     Not long before her request for FMLA leave, Plaintiff had received a positive annual review in which her performance exceeded expectations and qualified her for a wage increase.

**82.**     However, on or about June 25, 2020—approximately four days before Plaintiff's scheduled surgery and the start of her FMLA leave—Defendant Weir told Plaintiff during their biweekly meeting that she was being put on a monthly performance improvement plan.

**83.**     Plaintiff was told that she was being placed on the performance improvement plan because she allegedly missed a member contact at an earlier date.

**84.**     Under the performance improvement plan, Plaintiff would be required to complete all of her monthly contacts in three weeks instead of the four weeks allotted to the other employees.

**85.**     The performance improvement plan was sent to Plaintiff via email and she was not provided an opportunity to respond or voice concerns about the plan.

**86.**     On this same day, Plaintiff received her four percent wage increase and incentive that became effective on June 21, 2021, just prior to the approval of her FMLA leave.

**87.**     The conflicting feedback confused Plaintiff.

**88.**     Plaintiff's workday performance metrics also did not indicate that she was performing poorly.

**89.**     Plaintiff began FMLA leave on or about June 29, 2020.

**90.**     Prior to taking her FMLA leave, Plaintiff created a spreadsheet with her caseload and assignments to assist the case manager that took over her work.

**91.**     Plaintiff reviewed her caseload with Defendant Weir twice prior to taking her leave.

**92.**     Plaintiff returned to work on September 3, 2020.

10

**93.**     Upon her return, Plaintiff received little communication from Defendant Weir.

**94.**     Defendant Weir scheduled a meeting with Plaintiff to discuss caseload updates, but this meeting was canceled and rescheduled a week later.

**95.**     During this time, Plaintiff asked when her cases would be reassigned to her, but Defendant Weir told her that this would be discussed in their upcoming meeting.

**96.**     On or about September 10, 2020, Plaintiff and Defendant Weir met and Defendant Weir told Plaintiff that a member on her caseload did not receive a letter that should have been mailed.

**97.**     This failure resulted in a fine.

**98.**     Plaintiff did not know which case manager was assigned to this member during Plaintiff's leave, so she could not discuss with that case manager.

**99.**     Defendant Weir gave Plaintiff the impression that she was expected to complete this task while on leave.

**100.**     Defendant Weir informed Plaintiff this failure was in violation of performance improvement plan.

**101.**     As a result, Defendant Weir did not reassign Plaintiff's caseload to her.

**102.**     Other employees had incurred fines for similar reasons and they had all continued to work with their caseloads.

**103.**     When Plaintiff asked what she needed to do and when she would be speaking to Defendant Weir again, she was not given a date and was told to complete upcoming trainings if they were available.

**104.**     Plaintiff experienced severe anxiety during this time period that required medication.

**105.**     Plaintiff asked Defendant Weir for updates but did not receive a response.

**106.**     On or about September 17, 2020, Plaintiff had a Zoom meeting with Defendant Weir and Defendant Duea, Human Resources Partner.

**107.**     During this meeting, Defendants terminated Plaintiff's employment.

## COUNT I—DISCRIMINATION—REAL OR PERCEIVED DISABILITY (IOWA CODE CHAPTER 216)

**108.**     Plaintiff re-pleads and incorporates Paragraphs 1–107 and 134–331 as if pled herein.

**109.**     The Defendants treated Plaintiff differently in terms and conditions of her employment based on her real or perceived disability.

**110.**     Plaintiff has been diagnosed with and is being treated for panic disorder.

**111.**     In April 2020, Plaintiff disclosed to Defendant Weir that she had a panic disorder and concerns regarding COVID-19.

**112.**     Prior to the disclosure, Defendant Weir would respond promptly to Plaintiff's emails and interoffice messages.

**113.**     Defendant Weir would readily share what she would normally do or what she found easiest in similar situations.

**114.**     At times, Defendant Weir would even call Plaintiff and spend 15 to 20 minutes discussing her processes and reasons behind them. Defendant Weir would even apologize to Plaintiff for giving more detail than was needed.

**115.** After this disclosure, Defendant Wier's availability and demeanor changed.

**116.** Plaintiff continued to reach out to Defendant Weir for assistance as needed but would not receive a response.

**117.** Meanwhile, Plaintiff's coworkers reported that Defendant Weir was communicating with them.

**118.** During this time, Plaintiff continued to complete all of her duties by their assigned deadlines.

**119.** At no point did Plaintiff witness Defendant Weir treating another employee in the manner she treated Plaintiff.

**120.** In fact, Defendant Weir provided a lot of hands-on assistance to another male case manager that started not long after Plaintiff.

**121.** Defendant Weir would frequently offer praise and encouragement to this case manager during meetings company meetings, and she would select him for special projects.

**122.** When Defendant Weir did respond to Plaintiff's inquiries, she would instruct Plaintiff to go look up the answer herself or advise Plaintiff that the questions would be discussed in their biweekly one-on-one meetings.

**123.** However, these meetings sometimes would be canceled or postponed often without explanation.

**124.** Sometimes Defendant Weir would not reschedule the meetings at all.

**125.** When the meetings did occur, Defendant Weir would brush Plaintiff's questions aside.

**126.** Defendants treated Plaintiff differently on the basis of a real or perceived disability.

13

**127.** Defendants then wrongfully terminated Plaintiff on the basis of her disability.

**128.** The disability discrimination consisted of the facts alleged above.

**129.** The disability discrimination consisted of other such facts as the evidence will show.

**130.** The Defendants actions violated Iowa Code Chapter 216.

**131.** The Defendants actions violated Iowa Code Chapter 216 in such other ways as the evidence may demonstrate.

**132.** Defendant's actions were the proximate cause of Plaintiff's damages.

**133.** Plaintiff has suffered the damages of loss of past and future wages, benefits and other expenses, damages to reputation, pain and suffering, and his incurred attorney fees and expenses and such other proximate damages as are shown by the evidence.

**WHEREFORE**, the Plaintiff, Tela Robinson, respectfully prays for judgment against Defendants Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc. Stephanie Weir, and Christina Duea in a sum deemed reasonable and proper for compensatory damages past and future, lost wages, backpay, front pay, attorney fees, for cost and interest, and such other or further relief as just and proper.

## COUNT II—DISCRIMINATION—REAL OR PERCEIVED DISABILITY
## (AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, et seq.)

**134.** Plaintiff re-pleads and incorporates Paragraphs 1–133 and 165–331 as if pled herein.

**135.** The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to

14

job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

**136.** Plaintiff has been diagnosed with and is being treated for panic disorder.

**137.** Plaintiff's panic disorder limits at least one of Plaintiff's major life activities.

**138.** Plaintiff was fully qualified to perform her job as Case Manager.

**139.** Plaintiff received a four percent wage increase and incentive that became effective on June 21, 2021, because her performance exceeded expectations.

**140.** Defendants Centene Corporation, Centene Management Company, and Iowa Total Care are covered employers under the ADA.

**141.** In April of 2020, Plaintiff disclosed to Defendant Weir that she had a panic disorder and concerns regarding COVID-19.

**142.** After this disclosure, Plaintiff noted a shift in Defendant Wier's availability and demeanor.

**143.** Prior to the disclosure, Defendant Weir would respond promptly to Plaintiff's emails and interoffice messages.

**144.** Plaintiff continued to reach out to Defendant Weir for assistance as needed but would not receive a response.

**145.** Meanwhile, Plaintiff's coworkers reported that Defendant Weir was communicating with them.

**146.** During this time, Plaintiff continued to complete all of her duties by their assigned deadlines.

**147.** However, Defendant Weir once discouraged Plaintiff from updating assessments to complete reports, but Defendant Weir then criticized Plaintiff for failing to update these assessments in a timely fashion.

**148.** At no point did Plaintiff witness Defendant Weir treating another employee in this manner.

**149.** Defendant Weir would send out a weekly report to inform case managers of how many member contacts were needed that month, with the expectation that all of these member contacts would be completed by month's end

**150.** Defendant Weir advised Plaintiff that she did not like how Plaintiff structured her schedule. Namely, that Plaintiff focused on paperwork and meetings at the beginning of the month and focused on telephone contacts at the end of the month.

**151.** However, other employees structured their months in a similar way and did not receive the same feedback from Defendant Weir.

**152.** On or about June 25, 2020, Defendant Weir told Plaintiff that she was being put on a monthly performance improvement plan.

**153.** Plaintiff was told that she was being placed on the performance improvement plan because she allegedly missed a member contact at an earlier date.

**154.** Under the performance improvement plan, Plaintiff would be required to complete all of her monthly contacts in three weeks instead of the four weeks allotted to the other employees.

**155.** On or about September 17, 2020, Plaintiff's employment was terminated during a Zoom meeting with Defendant Weir and Defendant Duea, Human Resources Partner.

**156.**    The Defendants Plaintiff differently in terms and conditions of her employment based on her real or perceived disability.

**157.**    Defendants then wrongfully terminated Plaintiff on the basis of her disability.

**158.**    The disability discrimination consisted of the facts alleged above.

**159.**    The disability discrimination consisted of other such facts as the evidence will show.

**160.**    The Defendants actions violated 42 U.S.C. § 12101, et seq.

**161.**    The Defendants actions violated 42 U.S.C. § 12101, et seq. in such other ways as the evidence may demonstrate.

**162.**    Defendant's actions were the proximate cause of Plaintiff's damages.

**163.**    Plaintiff has suffered the damages of loss of past and future wages, benefits and other expenses, damages to reputation, pain and suffering, and his incurred attorney fees and expenses and such other proximate damages as are shown by the evidence.

**164.**    The actions of Defendants were willful and wonton, which warrant an award of punitive and/or liquidated damages.

**WHEREFORE**, the Plaintiff, Tela Robinson, respectfully prays for judgment against Defendants Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc. Stephanie Weir, and Christina Duea in a sum deemed reasonable and proper for compensatory damages past and future, lost wages, backpay, front pay, attorney fees, for cost and interest, and such other or further relief as just and proper.

## COUNT III—DISCRIMINATION–SEXUAL ORIENTATION AND GENDER (IOWA CODE 216)

**165.** Plaintiff re-pleads and incorporates Paragraphs 1–164 and 185–331 as if pled herein.

**166.** Plaintiff is female.

**167.** Plaintiff is a lesbian.

**168.** In May 2020, Plaintiff informed Defendant Weir that she and her wife were expecting a baby at the end of September.

**169.** Plaintiff also informed her that she would be taking six to eight weeks of maternity leave.

**170.** The Defendants in this case treated Plaintiff differently in the terms and conditions of her employment based on her gender and/or sexual orientation.

**171.** Defendant Weir immediately responded that Plaintiff "will want to double check with HR about that."

**172.** Defendant Weir's tone suggested that she did not think Plaintiff qualified for maternity leave.

**173.** After this disclosure, Plaintiff noted a shift in Defendant Wier's availability and demeanor.

**174.** Prior to the disclosure, Defendant Weir would promptly respond to Plaintiff's emails and interoffice messages.

**175.** Plaintiff continued to reach out to Defendant Weir for assistance as needed but would not receive a response.

18

**176.**    Meanwhile, Plaintiff's coworkers reported that Defendant Weir was communicating with them.

**177.**    During this time, Plaintiff continued to complete all of her duties by their assigned deadlines.

**178.**    Defendants then wrongfully terminated Plaintiff on the basis of her sexual orientation and/or gender.

**179.**    The disability discrimination consisted of the facts alleged above.

**180.**    The disability discrimination consisted of other such facts as the evidence will show.

**181.**    The Defendants actions violated Iowa Code Chapter 216.

**182.**    The Defendants actions violated Iowa Code Chapter 216 in such other ways as the evidence may demonstrate.

**183.**    Defendant's actions were the proximate cause of Plaintiff's damages.

**184.**    Plaintiff has suffered the damages of loss of past and future wages, benefits and other expenses, damages to reputation, pain and suffering, and his incurred attorney fees and expenses and such other proximate damages as are shown by the evidence.

**WHEREFORE**, the Plaintiff, Tela Robinson, respectfully prays for judgment against Defendants Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc. Stephanie Weir, and Christina Duea in a sum deemed reasonable and proper for compensatory damages past and future, lost wages, backpay, front pay, attorney fees, for cost and interest, and such other or further relief as just and proper.

## COUNT IV—DISCRIMINATION—SEXUAL ORIENTATION/GENDER (TITLE VII)

185. Plaintiff re-pleads paragraphs 1–184 and 206–331 as if stated herein.

186. Plaintiff is Black/African American.

187. Defendant discriminated against the Plaintiff based on her gender and sexual orientation in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 USC § 1981.

188. Plaintiff is female.

189. Plaintiff is a lesbian.

190. In May 2020, Plaintiff informed Defendant Weir that she and her wife were expecting a baby at the end of September.

191. Plaintiff also informed her that she would be taking six to eight weeks of maternity leave.

192. Defendant Weir immediately responded that Plaintiff "will want to double check with HR about that."

193. Defendant Weir's tone suggested that she did not think Plaintiff qualified for maternity leave.

194. After this disclosure, Plaintiff noted a shift in Defendant Wier's availability and demeanor.

195. Prior to the disclosure, Defendant Weir would promptly respond to Plaintiff's emails and interoffice messages.

**196.** Plaintiff continued to reach out to Defendant Weir for assistance as needed but would not receive a response.

**197.** Defendants treated Plaintiff differently because she was a woman with a wife who was pregnant and because she sought to take maternity leave as a result.

**198.** The Defendants in this case treated Plaintiff differently in the terms and conditions of her employment based on her gender and/or sexual orientation.

**199.** Defendants then wrongfully terminated Plaintiff on the basis of her gender and/or sexual orientation.

**200.** The disability discrimination consisted of the facts alleged above.

**201.** The disability discrimination consisted of other such facts as the evidence will show.

**202.** The Defendants actions violated Title VII of the Civil Rights Act of 1964.

**203.** The Defendants actions violated Title VII of the Civil Rights Act of 1964 in such other ways as the evidence may demonstrate.

**204.** Defendant's actions were the proximate cause of Plaintiff's damages.

**205.** Plaintiff has suffered the damages of loss of past and future wages, benefits and other expenses, damages to reputation, pain and suffering, and his incurred attorney fees and expenses and such other proximate damages as are shown by the evidence.

**206.** The actions of Defendants were willful and wonton, which warrant an award of punitive and/or liquidated damages.

**WHEREFORE**, the Plaintiff, Tela Robinson, respectfully prays for judgment against Defendants Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc.

Stephanie Weir, and Christina Duea in a sum deemed reasonable and proper for compensatory damages past and future, lost wages, backpay, front pay, attorney fees, for cost and interest, and such other or further relief as just and proper.

## COUNT V—DISCRIMINATION—PREGNANCY (IOWA CODE 216)

**207.** Plaintiff re-pleads paragraphs 1–206 and 217–331 as if stated herein.

**208.** Plaintiff is female.

**209.** In May 2020, Plaintiff informed Defendant Weir that she and her wife were expecting a baby at the end of September.

**210.** Plaintiff also informed her that she would be taking six to eight weeks of maternity leave.

**211.** Plaintiff suffered from adverse employment actions in the form of termination because she was a woman who sought to take maternity leave.

**212.** The Defendants' actions violated Iowa Code Chapter 216.

**213.** Defendants' actions violated Iowa Code Chapter 216 in other ways such as the evidence may demonstrate.

**214.** Defendants' actions were the proximate cause of Plaintiff's damages.

**215.** Plaintiff suffered the damages of loss of past and future wages, benefits and other expenses, damage to reputation, pain and suffering, a loss of earnings and has incurred attorney fees and expenses and such other proximate damages as are shown by the evidence.

**216.** Plaintiff's losses are a direct result of the Defendant's actions.

**WHEREFORE**, the Plaintiff, Tela Robinson, respectfully prays for judgment against Defendants Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc.

Stephanie Weir, and Christina Duea in a sum deemed reasonable and proper for compensatory damages past and future, lost wages, backpay, front pay, attorney fees, for cost and interest, and such other or further relief as just and proper.

## COUNT VI—DISCRIMINATION—PREGNANCY (TITLE VII/PREGNANCY DISCRIMINATION ACT)

**217.** Plaintiff re-pleads paragraphs 1–216 and 228–331 as if stated herein.

**218.** Plaintiff is female.

**219.** In May 2020, Plaintiff informed Defendant Weir that she and her wife were expecting a baby at the end of September.

**220.** Plaintiff also informed her that she would be taking six to eight weeks of maternity leave.

**221.** Plaintiff suffered from adverse employment actions in the form of termination because she was a woman who sought to take pregnancy induced leave.

**222.** The Defendants' actions violated the Pregnancy Discrimination Act. Civil Rights Act of 1964, § 701(k), as amended, 42 U.S.C. § 2000e(k).

**223.** Defendants' actions violated Pregnancy Discrimination Act in other ways such as the evidence may demonstrate.

**224.** Defendants' actions were the proximate cause of Plaintiff's damages.

**225.** Plaintiff suffered the damages of loss of past and future wages, benefits and other expenses, damage to reputation, pain and suffering, a loss of earnings and has incurred attorney fees and expenses and such other proximate damages as are shown by the evidence.

**226.** Plaintiff's losses are a direct result of the Defendant's actions.

**227.**    The actions of Defendants were willful and wonton, which warrant an award of punitive and/or liquidated damages.

**WHEREFORE**, the Plaintiff, Tela Robinson, respectfully prays for judgment against Defendants Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc. Stephanie Weir, and Christina Duea in a sum deemed reasonable and proper for compensatory damages past and future, lost wages, backpay, front pay, attorney fees, for cost and interest, and such other or further relief as just and proper.

## COUNT VII—DISCRIMINATION—RACE (IOWA CODE 216)

**228.**    Plaintiff re-pleads and incorporates Paragraphs 1–227 and 244–331 as if pled herein.

**229.**    Plaintiff is Black/African American.

**230.**    Plaintiff was treated differently by Defendants based on her race.

**231.**    Defendants treated Plaintiff differently than white employees.

**232.**    During Plaintiff's training period as Case Manager, Defendant Weir assigned her to a high-needs member who "preferred to work with black people."

**233.**    Plaintiff was one of only two Black employees on Weir's team.

**234.**    Plaintiff believed that this member would be better served by a coworker with more experience.

**235.**    Defendant Weir's actions made Plaintiff very uncomfortable at being singled out.

**236.**    Because she was relatively new to the Case Manager position, Plaintiff often had to seek assistance from her Defendant Weir and other coworkers.

**237.** Defendant Weir was often unavailable during these inquiries only to follow up with Plaintiff at a later time.

**238.** Plaintiff suffered from adverse employment actions in the form of termination as a result of race discrimination.

**239.** The Defendants' actions violated Iowa Code Chapter 216.

**240.** Defendants' actions violated Iowa Code Chapter 216 in other ways such as the evidence may demonstrate.

**241.** Plaintiff suffered damages as a result of the conduct on the Defendant.

**242.** Defendants' actions were the proximate cause of Plaintiff's damages.

**243.** Plaintiff suffered the damages of loss of past and future wages, benefits and other expenses, damage to reputation, pain and suffering, a loss of earnings and has incurred attorney fees and expenses and such other proximate damages as are shown by the evidence.

**WHEREFORE**, the Plaintiff, Tela Robinson, respectfully prays for judgment against Defendants Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc. Stephanie Weir, and Christina Duea in a sum deemed reasonable and proper for compensatory damages past and future, lost wages, backpay, front pay, attorney fees, for cost and interest, and such other or further relief as just and proper.

## COUNT VIII—DISCRIMINATION—RACE (TITLE VII)

**244.** Plaintiff re-pleads paragraphs 1–243 and 263–331 as if stated herein.

**245.** Plaintiff is Black/African American.

**246.** Defendant discriminated against the Plaintiff based on her race in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 USC § 1981.

247. Plaintiff was treated differently by Defendants based on her race.

248. Defendants treated Plaintiff differently than white employees.

249. During Plaintiff's training period as Case Manager, Defendant Weir assigned her to a high-needs member who "preferred to work with black people."

250. Plaintiff was one of only two Black employees on Weir's team.

251. Plaintiff believed that this member would be better served by a coworker with more experience.

252. Defendant Weir's actions made Plaintiff very uncomfortable at being singled out.

253. Because she was relatively new to the Case Manager position, Plaintiff often had to seek assistance from her Defendant Weir and other coworkers.

254. Defendant Weir was often unavailable during these inquiries only to follow up with Plaintiff at a later time.

255. Plaintiff suffered from adverse employment actions in the form of termination as a result of race discrimination.

256. The Defendants' actions violated Title VII of the Civil Rights Act of 1964, as amended, and 42 USC § 1981.

257. Defendants' actions violated Title VII of the Civil Rights Act of 1964, as amended, and 42 USC § 1981 in other ways such as the evidence may demonstrate.

258. Plaintiff suffered damages as a result of the conduct on the Defendant.

259. Defendants' actions were the proximate cause of Plaintiff's damages.

**260.** Plaintiff suffered the damages of loss of past and future wages, benefits and other expenses, damage to reputation, pain and suffering, a loss of earnings and has incurred attorney fees and expenses and such other proximate damages as are shown by the evidence.

**261.** The actions of Defendants were willful and wonton, which warrant an award of punitive and/or liquidated damages.

**262.** Plaintiff's losses are a direct result of the Defendant's actions.

**WHEREFORE**, the Plaintiff, Tela Robinson, respectfully prays for judgment against Defendants Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc. Stephanie Weir, and Christina Duea in a sum deemed reasonable and proper for compensatory damages past and future, lost wages, backpay, front pay, attorney fees, for cost and interest, and such other or further relief as just and proper.

## COUNT IX—VIOLATION OF RIGHTS UNDER THE FAMILY AND MEDIAL LEAVE ACT (29 U.S.C. § 2601, et seq.)

**263.** Plaintiff re-pleads paragraphs 1–262 and 303–331 as if stated herein.

**264.** The Defendants' actions in terminating the Plaintiff on the basis of disability, race, sexual orientation, and gender as well as based her usage of FMLA leave, were in violation of Plaintiff's substantial rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

**265.** Defendants Centene Corporation, Centene Management Company, and Iowa Total Care are private employers with more than 50 employees.

**266.** Plaintiff worked for a covered employer.

**267.** Plaintiff worked more than 1,250 hours during the 12 months prior to the start of her FMLA leave.

**268.** Plaintiff worked at a location where 50 or more employees worked at her location or within 75 miles of it.

**269.** Plaintiff worked for her employer for more than 12 months at the time she requested FMLA leave.

**270.** On or about June 11, 2020, Plaintiff informed Defendant Weir that she was experiencing physical health issues (Menorrhagia) due to uterine tumors.

**271.** Plaintiff asked to adjust her schedule for the day as she required an emergency blood transfusion.

**272.** Plaintiff notified Defendant Weir that Plaintiff's doctor had advised her that she would need a hysterectomy to treat the condition.

**273.** Defendant Weir asked about the length of Plaintiff's leave for the operation.

**274.** Plaintiff responded that her physician said that recovery could take between four and eight weeks and told Defendant Weir that she would follow up once she had more information.

**275.** Plaintiff submitted a request for leave under the Family and Medical Leave Act on or about July 21, 2020.

**276.** Plaintiff's surgery was scheduled for July 29, 2020, and Defendants approved Plaintiff's request to begin FMLA leave on that date.

**277.** Plaintiff informed Defendant Weir and Human Resources of this date.

**278.** Plaintiff also submitted a claim for Short Term Disability benefits to begin on or about August 5, 2020, and end on or about August 25, 2020.

279.    This claim was approved, and these benefits were subsequently extended through approximately September 2, 2020.

280.    Not long before her request for FMLA leave, Plaintiff had received a positive annual review in which her performance exceeded expectations and qualified her for a wage increase.

281.    On or about June 25, 2020—approximately four days before Plaintiff's scheduled surgery and the start of her FMLA leave—Defendant Weir told Plaintiff during their biweekly meeting that she was being put on a monthly performance improvement plan.

282.    Plaintiff was told that she was being placed on the performance improvement plan because she allegedly missed a member contact at an earlier date.

283.    Under the performance improvement plan, Plaintiff would be required to complete all of her monthly contacts in three weeks instead of the four weeks allotted to the other employees.

284.    The performance improvement plan was sent to Plaintiff via email and she was not provided an opportunity to respond or voice concerns about the plan.

285.    On this same day, Plaintiff received her four percent wage increase and incentive that became effective on June 21, 2021, just before she was approved for FMLA leave.

286.    Plaintiff's workday performance metrics also did not indicate that she was performing poorly.

287.    Plaintiff began FMLA leave on or about June 29, 2020.

288.    Prior to taking her FMLA leave, Plaintiff created a spreadsheet with her caseload and assignments to assist the case manager that took over her work.

289.    Plaintiff reviewed her caseload with Defendant Weir twice prior to taking her leave.

29

**290.** Plaintiff returned to work on September 3, 2020.

**291.** Upon her return, Plaintiff received little communication from Defendant Weir.

**292.** On or about September 10, 2020, Plaintiff and Defendant. Weir met and Defendant Weir told Plaintiff that a member on her caseload did not receive a letter that should have been mailed.

**293.** This failure resulted in a fine.

**294.** Plaintiff did not know which case manager was assigned to this member during Plaintiff's leave, so she could not discuss with that case manager.

**295.** Defendant Weir gave Plaintiff the impression that she was expected to complete this task while on leave.

**296.** Defendant Weir informed Plaintiff this failure was in violation of performance improvement plan.

**297.** Other employees had incurred fines for similar reasons and they had all continued to work with their caseloads.

**298.** When Plaintiff asked what she needed to do and when she would be speaking to Defendant Weir again, she was not given a date and was told to complete upcoming trainings if they were available.

**299.** On or about September 17, 2020, Plaintiff had a Zoom meeting with Defendant Weir and Defendant Duea, Human Resources Partner.

**300.** During this meeting, Defendants terminated Plaintiff's employment

**301.** The Defendants' actions were both in violation of the Family and Medical Leave Act in interfering and in retaliation for the Plaintiff exercising her rights pursuant to FMLA.

**302.** As a proximate case of Defendants' actions, Plaintiff has suffered general and special damages, including past and continuing lost wages and benefits.

**303.** The actions of Defendants were willful and wonton, which warrant an award of liquidated damages.

**WHEREFORE,** the Plaintiff, Tela Robinson., respectfully prays for judgment against Defendants Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc. Stephanie Weir, and Christina Duea in a sum deemed reasonable and proper for compensatory damages past and future, lost wages, backpay, front pay, attorney fees, for cost and interest, and such other or further relief as just and proper.

## COUNT X—WRONGFUL TERMINATION—DISABILITY, GENDER, SEXUAL ORIENTATION, PREGNANCY, AND RACE

**304.** Plaintiff repleads and incorporates Paragraphs 1–303 as if pled herein.

**305.** Plaintiff has been diagnosed with and is being treated for panic disorder.

**306.** Plaintiff is female.

**307.** Plaintiff is lesbian.

**308.** Plaintiff is Black/African American.

**309.** At the time of Plaintiff's termination, Plaintiff's wife was pregnant and Plaintiff was seeking maternity leave.

**310.** On or about June 25, 2020—approximately four days before Plaintiff's scheduled surgery and the start of FMLA leave—Defendant Weir told Plaintiff during their biweekly meeting that she was being put on a monthly performance improvement plan.

**311.** However, on this same day, Plaintiff received a four percent wage increase and incentive that became effective on June 21, 2021, because her performance exceeded expectations.

**312.** Plaintiff's workday performance metrics also did not indicate that she was performing poorly.

**313.** On or about September 10, 2020, after Plaintiff returned from FMLA leave Plaintiff and Defendant. Weir met and Defendant Weir told Plaintiff that a member on her caseload did not receive a letter that should have been mailed.

**314.** This failure resulted in a fine.

**315.** Plaintiff did not know which case manager was assigned to this member during Plaintiff's leave, so she could not discuss with that case manager.

**316.** Defendant Weir gave Plaintiff the impression that she was expected to complete this task while on leave.

**317.** Defendant Weir informed Plaintiff this failure was in violation of performance improvement plan.

**318.** Other employees had incurred fines for similar reasons and they had all continued to work with their caseloads.

**319.** When Plaintiff asked what she needed to do and when she would be speaking to Defendant Weir again, she was not given a date and was told to complete upcoming trainings if they were available.

**320.** On or about September 17, 2020, Plaintiff had a Zoom meeting with Defendant Weir and Defendant Duea, Human Resources Partner.

**321.** During this meeting, Defendants terminated Plaintiff's employment

**322.** Defendants did not inform Plaintiff that she would be held responsible for her coworkers contacting the members of her caseload while Plaintiff was on leave.

**323.** This action by the Defendant resulted in Plaintiff's inability to rectify the issue before it became a problem.

**324.** Plaintiff followed her supervisor's instructions and completed trainings because her supervisor did not assign her caseload back to her.

**325.** Defendant proceeded to terminate Plaintiff because of performance issues that were directly caused by Defendants; lack of communication with Plaintiff.

**326.** Plaintiff's termination was due, in part or in whole, to her disability, gender, sexual orientation, race, and request for maternity leave.

**327.** The Defendants actions violated Iowa Code Chapter 216.

**328.** Defendants' actions violated Iowa Code Chapter 216 in such other ways as the evidence may demonstrate.

**329.** Defendants' actions were the proximate cause of Plaintiff's damages

**330.** Plaintiff suffered the damages of loss of past and future wages, benefits and other expenses, damage to reputation, pain and suffering, a loss of earnings and has incurred attorney fees and expenses and such other proximate damages as are shown by the evidence.

**331.** The actions of Defendants were willful and wonton, which warrant an award of punitive and/or liquidated damages.

**WHEREFORE**, the Plaintiff, Tela Robinson, respectfully prays for judgment against Defendants Centene Corporation, Centene Management Company, LLC, Iowa Total Care, Inc. Stephanie Weir, and Christina Duea in a sum deemed reasonable and proper for compensatory

damages past and future, lost wages, backpay, front pay, attorney fees, for cost and interest, and

such other or further relief as just and proper.

Respectfully submitted,

By:    */s/Bruce H. Stoltze, Jr.*
          Bruce H. Stoltze, Jr. (AT0010694)
          Amanda M. Bartusek (AT0011789)
          STOLTZE & STOLTZE, PLC
          300 Walnut Street, Ste. 260
          Des Moines, Iowa 50309
          Telephone: 515.244.1473
          Facsimile: 515.244.3930
          E-mail: bj.stoltze@stoltzelaw.com
          E-mail: amanda.bartusek@stoltzelaw.com
          ATTORNEYS FOR PLAINTIFF

34

## <u>JURY DEMAND</u>

COMES NOW the Plaintiff, Tela Robinson, and hereby demands a trial by jury of all

issues properly triable to a jury.

Respectfully submitted,

By:     */s/Bruce H. Stoltze, Jr.*
Bruce H. Stoltze, Jr. (AT0010694)
Amanda M. Bartusek (AT0011789)
STOLTZE & STOLTZE, PLC
300 Walnut Street, Ste. 260
Des Moines, Iowa 50309
Telephone: 515.244.1473
Facsimile: 515.244.3930
E-mail: bj.stoltze@stoltzelaw.com
E-mail: amanda.bartusek@stoltzelaw.com
ATTORNEYS FOR PLAINTIFF

35

## IN THE IOWA DISTRICT COURT FOR DALLAS COUNTY

|  |  |
|---|---|
| TELA ROBINSON,<br><br>    Plaintiff,<br><br>v.<br><br>CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY, LLC, IOWA TOTAL CARE, INC., STEPHANIE WEIR, and CHRISTINA DUEA,<br><br>    Defendants. | Case No. LACV043243<br><br>**PLAINTIFF'S NOTICE OF DISMISSAL WITHOUT PREJUDICE AS TO COUNTS II, IV, VI, VIII, AND IX AGAINST DEFENDANTS STEPHANIE WEIR AND CHRISTINA DUEA ONLY** |

**COMES NOW** the Plaintiff, Tela Robinson and hereby gives notice of her dismissal without prejudice as to the following Counts against Defendants Stephanie Weir and Christina Duea only:

1. Count II—Discrimination—Real or Perceived Disability (Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.);

2. Count IV—Discrimination—Sexual Orientation/Gender (Title VII);

3. Count VI—Discrimination—Pregnancy (Title VII/Pregnancy Discrimination Act);

4. Count VIII—Discrimination—Race (Title VII); and

5. Count IX—Violation of Rights Under the Family and Medical Leave Act (29 U.S.C. § 2601, et seq.).

This dismissal affects only the federal claims against individual Defendants Stephanie Weir and Christina Duea. This dismissal does not affect these counts as to Defendants Centene Corporation, Centene Management Company, LLC, and Iowa Total Care, Inc., nor does it affect the remaining counts of Plaintiff's Petition. This dismissal also does not affect the factual allegations contained in paragraphs 134–64, 185–206, 217–27, 244–62, and 263–303.

Respectfully Submitted,

By:    */s/ Bruce H. Stoltze, Jr.*
           Bruce H. Stoltze, Jr. (AT0010694)
           Amanda M. Bartusek (AT0011789)
           Stoltze & Stoltze, PLC
           300 Walnut Street, Ste. 260
           Des Moines, Iowa 50309
           Telephone :  (515) 244-1473
           Facsimile :  (515) 244-3930
           E-mail: bj.stoltze@stoltzelaw.com
           E-mail: amanda.bartusek@stoltzelaw.com
           ATTORNEYS FOR PLAINTIFF

ORIGINAL FILED ELECTRONICALLY VIA EDMS